**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Smith, | No. CV-23-01509-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Jennifer Smith seeks review of a final decision of the Commissioner of Social Security denying her application for disability supplemental security income. Smith argues that the Administrative Law Judge's analysis of her medical record was not based on substantial evidence; the ALJ did not provide clear and convincing reasons for discounting her symptom testimony; and he did not consider whether, when combined with functional limitations, her obesity medically equaled a statutorily listed impairment. (Doc. 10.) Because the ALJ's opinion is not based on substantial evidence, it is vacated and remanded for further proceedings.

**I.   Background**

    **a.   Procedural History**

Smith filed her application for disability supplemental security income on October 13, 2020. (Administrative Record ("AR") 15, Doc. 8-3 at 16.)[1] Smith is super morbidly obese, weighing 574 pounds with a body mass index greater than 80. (AR 40.) In her

---

[1] The complete AR spans Doc. 8-3 through Doc. 9-9.

application, Smith claimed physical impairments of obesity, congestive heart failure, pre-diabetes, blood pressure, neuropathy of both feet, moderate persistent asthma, restless leg syndrome, carpal tunnel syndrome, and knee pain. (AR 19–20.) She also claimed mental impairments of depression, anxiety, and attention deficit hyperactivity disorder. (AR 21.) After initial denials, Smith and a vocational expert testified before an ALJ on April 21, 2022. (AR 16.) The ALJ denied her claim on July 22, 2022.

### b. Five Step Evaluation Process

The ALJ follows a five-step process to determine whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a). *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022). At step three, the claimant must show that her impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If the inquiry proceeds to step four, the claimant must show her residual functional capacity ("RFC")—the most she can do with her impairments—precludes her from performing her past work. *Id.* If the claimant meets her burden at step four, then at step five the Commissioner must determine if the claimant is able to perform other work that "exists in significant numbers in the national economy" given the claimant's RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

Smith met her burden at step one and two. But the ALJ found at step three that Smith's impairments or combination of impairments did not meet or medically equal a listed impairment. (AR 23.) After reviewing Smith's medical record, symptom testimony, and third-party statements from her mother and cousin, the ALJ found at step four that Smith had an RFC to perform sedentary work with some additional limitations that included occasional stooping and sitting for six hours in an eight-hour workday. (AR 23.)

The ALJ found that Smith's past work as a veterinary technician and a dog groomer exceeded her RFC. (AR 28.)

Based on Smith's RFC, relevant vocational factors, and testimony from the vocational expert, the ALJ determined at step five that Smith could perform the jobs of order clerk, hand mounter, and document preparer. (AR 29.) The ALJ therefore found Smith not disabled. (AR 30.)

## II.     Standard of Review

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.    Discussion

Smith asserts three errors in the ALJ's decision requiring remand: (1) the ALJ's analysis of medical opinion evidence was not based on substantial evidence; (2) the ALJ failed to articulate clear and convincing reasons to discount Smith's testimony; (3) and the ALJ failed to analyze whether Smith's obesity combined with functional limitations caused by joint pain and dysfunction medically equaled Listing 1.18. (Doc. 10 at 2.) Because the ALJ cherry-picked the medical opinions without adequately examining the supportability and consistency factors and rejected Smith's testimony without providing clear and convincing reasons, the case is remanded for additional proceedings.[2]

### a.    Medical Opinion Evidence

The most important factors in evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability is "the extent to which a medical source supports the medical opinion by explaining the

---

[2] In light of the remand, the court declines to address Smith's third claimed error. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012).

'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ must "articulate . . . how persuasive" he finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [he] considered the supportability and consistency factors" in reaching these findings. 20 C.F.R. § 404.1520c(b)(2). The ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Here, the ALJ gave Dr. Gordon's opinion "partial weight" (AR 27), finding that Dr. Gordon overestimated Smith's ability to carry because of her morbid obesity and underestimated her ability to sit and walk based on "largely normal" physical examinations in the medical record. (AR 27–28.) But the ALJ did so without examining the supportability of Dr. Gordon's opinion, and cherry-picked from the medical records in implicitly evaluating consistency.

As to supportability, Dr. Gordon's evaluation of Smith's mobility limitations at times appeared to be contradicted by his own observations. Dr. Gordon reported that Smith was unable to stoop during the evaluation but nonetheless concluded that she could stoop occasionally. (AR 1517.)[3] And even when Dr. Gordon's conclusions were supported by significant probative evidence, the ALJ rejected these findings without explanation if they supported Smith's claims. For instance, Dr. Gordon concluded that a walker was "medically necessary" and observed that Smith was unable to sit on the examination table, had a "slow and waddling-appearing gait," was "unable to lift each foot off the ground[,] stand without assistance[,] demonstrated overall difficulties with balance," and was "unable to walk in tandem or stand and walk on heels and toes." (AR 1517.) But the ALJ

---

[3] Smith's reply brief suggests a possible reason for this inconsistency. (Doc. 13 at 6 n.1.) Because neither party raised this explanation before the reply and neither the ALJ nor Dr. Gordon discussed it, the court declines to speculate as to its accuracy.

cursorily disregarded these observations by stating that use of a walker was "not consistent with medical documentation elsewhere in the file" and "the balance of physical exams . . . were rather unremarkable overall and [do] not support significant sitting limitations." (AR 27.)

In evaluating the consistency of Dr. Gordon's findings, the ALJ failed to take into account the record as a whole. The ALJ found that Dr. Gordon underestimated Smith's ability to sit "as the balance of physical exams . . . were rather unremarkable overall and [do] not support significant sitting limitations." (AR 27.) The ALJ chose statements from reports summarizing Smith's visits to her cardiologist and pulmonologist (and one report from her general practitioner) to support his conclusions, but even these reports contradicted the ALJ's findings when viewed wholistically. For instance, the ALJ noted that the report from Smith's December 17, 2021 visit to her general practitioner stated that she had "mildly decreased fine touch sensation in legs/feet." (AR 27.) That same report concluded that Smith had "decreased range of motion," "chronic low back pain, neck pain, joint pain, muscle pain," neuropathy of both feet, and "significant swelling in the right leg" severe enough to warrant further evaluation for a blood clot. (AR 997, 1000.)

The ALJ drew the bulk of support for his findings rejecting Gordon's opinion from Smith's cardiologist and pulmonologist's reports, which were not created for the purpose of examining Smith's gait and posture. (*Compare* AR 27 with AR 353 (cardiologist noted Smith "present[ed] . . . for evaluation and management of chronic diastolic heart failure.").) Moreover, the conclusions of these reports as to gait and posture were not substantiated by their own findings. For example, the report from Smith's January 26, 2021 visit to her cardiologist noted that she had "normal gait and posture" but that her legs were bandaged for edema and she was "unable to get up on an exam table" for an EKG. (AR 355.) Although an ALJ is not required to "discuss all evidence presented" to him, he "must explain why significant probative evidence has been rejected." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022). The ALJ did not explain why contradictory record evidence was rejected in favor of "descriptions of unremarkable status examinations [that]

did not take into account the record as a whole." *Caldwell v. Saul*, 840 F. App'x 907, 910 (9th Cir. 2020) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (an ALJ "may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotations omitted)).

For the reasons described above, the ALJ's conclusion was not based upon substantial evidence.

### b. Smith's Symptom Testimony

The ALJ found that Smith's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms," but concluded the "intensity, persistence and limiting effects of these symptoms" were "not entirely consistent with the medical evidence and other evidence in the record." (AR 24.) The ALJ's failure to offer specific, clear, and convincing reasons for rejecting Smith's symptom testimony is an additional harmful error warranting remand. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022).

An ALJ evaluates the credibility of a claimant's symptom testimony through a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014. First, the ALJ determines whether the claimant has "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotations omitted). The claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. (internal quotations omitted). An ALJ may not "'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Id*. at 494–95 (quoting *Burch*, 400 F.3d at 681). If the claimant satisfies this first step and the ALJ does not find "affirmative evidence of malingering," he can "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smartt*, 53 F.4th at 494 (internal quotations omitted).

Here, the ALJ concluded that Smith's impairments could reasonably be expected to

cause some of her alleged symptoms but rejected her testimony regarding the "intensity, persistence and limiting effects of these symptoms" due to a lack of corroborating medical evidence and "generally conservative treatment overall." (AR 24–25.) Because the ALJ did not find affirmative evidence of malingering, Smith's testimony can only be rejected for clear and convincing reasons. The ALJ failed to provide those reasons.

For example, the ALJ found Smith's medical record contained "few mentions of back pain complaints." (AR 25.) But Smith complained of back pain in the vast majority of medical reports the ALJ cited. (AR 25, 354, 361, 972, 997, 1003, 1022–23, 1035, 1038–39, 1050, 1065, 1068–69, 1071; 1083–1084; *cf.* AR 979.) Smith treated her back pain with gabapentin for years and was prescribed the highest available dosage by June 2021 even as her symptoms persisted. (*See, e.g.*, AR 997, 1002, 1005, 1084, 1516.) Smith attempted to see a specialist to treat her back pain but was unable to secure an appointment. (AR 1084.) And she also tried to obtain a more recent MRI but could not fit into the machine. (AR 24–25.) To the extent the ALJ discounted Smith's complaints of back pain without considering possible reasons she "might not have sought additional or more aggressive treatment," this too was harmful error. *See Torres v. Kijakai*, No. 20-17272, 2021 WL 5638008, at *2 (9th Cir. Dec. 1, 2021).

Separately, the ALJ cited a lack of medical evidence in the record to support Smith's claims but ignored consistent supporting evidence when it was presented. For instance, he rejected Smith's testimony regarding her need for a walker because there was "no mention of a walker" at earlier appointments, notwithstanding Dr. Gordon's finding that a walker was "medically necessary." (AR 25.) But "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins*, 466 F.3d at 882 (internal quotations omitted). The ALJ also discredited Smith's need to "[lie] down a total of 4 to 5 hours due to back problems" because she did not validate this need with a recommendation by a physician or any other proof it was "medically necessary." (AR 25.) But an ALJ "cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no

objective testimony evincing otherwise." *Smartt*, 53 F.4th at 498.

Finally, the ALJ discredited Smith's testimony due to her ability to complete some daily activities. But the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain." *Garrison*, 759 F.3d at 1016. Here, Smith's daily activities were consistent with her statements about her pain. The ability to prepare simple meals, communicate with friends and family virtually, drive short distances, dress and groom herself with some assistance "while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day," is consistent with the pain Smith described in her testimony and an inability to function in a workplace environment. *Id*.

Accordingly, the ALJ did not provide clear, convincing, and specific reasons to discredit Smith's testimony regarding her pain-related impairments.

### IV. Appropriate Remedy

Smith requested only that her case be remanded for reconsideration of the evidence. (Doc. 10 at 2.) Because additional proceedings may remedy defects in the original decision—namely the ALJ's failure to evaluate the supportability and consistency of the medical evidence and to offer clear and convincing reasons for rejecting Smith's testimony—remand for reconsideration is appropriate.

Accordingly,

**IT IS ORDERED** vacating and remanding the decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 25th day of September, 2024.

Honorable Krissa M. Lanham
United States District Judge